# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| KIRLEW S. GORDON, | ] |
| Movant, | ] |
| vs. | ] CIVIL ACTION NO. 01-IPJ-RRA-8037-E |
|  | ] CRIMINAL NO. 98-IPJ-RRA-412-E |
| THE UNITED STATES OF AMERICA, | ] |
| Respondent. | ] |

## MEMORANDUM OPINION

This is a motion to vacate, set aside, or correct a sentence, brought by a federal prisoner, pursuant to 28 U.S.C. § 2255. The movant, Kirlew S. Gordon, was convicted on April 29, 1999, on his plea of guilty to one count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 1) and one count of conspiracy to import cocaine into the United States, in violation of 18 U.S.C. § 371 (Count 4). On August 23, 1999, the United States filed a motion for a downward departure in the movant's sentencing guidelines, pursuant to the plea agreement. The trial judge denied the motion on August 23, 1999, then sentenced Gordon to 262 months' imprisonment on Count 1 and a concurrent sixty-month sentence on Count 4. Counts 2 and 3 of the indictment were dismissed pursuant to the plea agreement. The final judgment was entered on August 27, 1999.

On August 30, 1999, Gordon filed a notice of appeal. On July 31, 2000, the Eleventh Circuit Court of Appeals dismissed his appeal, finding that his "appeal fits within the terms of the sentence-appeal waiver in his plea agreement, and therefore, his appeal concerning the amount of cocaine that

was involved in the offense and the disparity between sentencing for cocaine base and cocaine hydrochloride is not properly before this court."

On July 26, 2001, Gordon filed a motion to vacate his conviction and sentence in this court.[1] In support of his motion, Gordon alleges that: 1) he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal an argument that the government breached the plea agreement; 2) he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal the issue of the district court's denial of allocution at sentencing; 3) he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal the trial court's failure to advise him of the elements of the crime with which he was charged; 4) he received ineffective assistance of counsel on appeal because his attorney failed to advise him of his right to seek rehearing en banc consideration or his right to seek certiorari review of the adverse decision in the United States Supreme Court; and 5) he was denied due process and his right to trial and notice because his drug quantity was decided by an unconstitutional preponderance of the evidence standard.

In response to the court's order to show cause, the respondent has filed an answer in which it argues that the motion to vacate is due to be denied. By order of the court, the parties were advised that the respondent's answer would be treated as a motion for summary dismissal. The movant was advised that in responding to the motion for summary dismissal, he must supply the court with counter-affidavits and/or documents to set forth specific facts showing that there are genuine issues of material fact to be decided. In response, the movant has filed an unsworn traverse.

---

[1] On August 18, 2003, the motion to vacate was inadvertently terminated, and the case was closed. Upon discovery of this error, the case was reopened on November 7, 2005.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

The United States Supreme Court has established a national standard for judging the effectiveness of criminal defense counsel under the Sixth Amendment. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result." *Strickland v. Washington*, 466 U.S. 668 (1984). The Court elaborated:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. at 687. "Because the [petitioner] must prove both deficiency and prejudice, a [petitioner's] failure to prove either will be fatal to his claim." *Johnson v. Scott,* 68 F.3d 106, 109 (5th Cir. 1995).

Under the *Strickland* test, the petitioner must initially show that counsel's representation fell below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "While it need not be errorless, counsel's advice 'must be within the realm of competence demanded of attorneys representing criminal defendants.'" *Jones v. White*, 992 F.2d 1548, 1557 (11th Cir. 1993)(*quoting Stano v. Dugger*, 921 F.2d 1125, 1151 (11th Cir.)(en banc), *cert. denied*, 502 U.S. 835 (1991)). In making such an evaluation, "the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The effectiveness or ineffectiveness of counsel

must be evaluated by consideration of the totality of the circumstances. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir. 1983), *cert. denied,* 467 U.S. 1219 (1984).

The second requisite element in a claim of ineffective assistance of counsel is a showing of prejudice. Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. *Strickland,* 466 U.S. at 691-92. In order to establish "actual prejudice, a petitioner must show that "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. *Strickland,* 466 U.S. at 694. Furthermore, in addition to showing that the outcome would have been different, a petitioner must prove that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Armstead v. Scott,* 37 F.3d 202, 207 (5th Cir. 1994)(*citing Lockhart v. Fretwell*, 113 S. Ct. 838, 844 (1993)). "In other words, a 'counsel's unprofessional errors [must] so upset the adversarial balance between the defense and prosecution that the trial was rendered unfair and the verdict suspect.'" *Weekley v. Jones*, 56 F.3d 889, 897 (8th Cir. 1995)(*quoting Fretwell*, 113 S. Ct. at 842). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Fretwell*, 113 S. Ct. at 844.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that "the two part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel," and that "to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted

on going to trial." *Hill v. Lockhart*, 474 U.S. at 58-59, 106 S. Ct. at 370-71. *United States v. Peas*, 240 F.3d 938 (11th Cir. 2001).

Gordon claims that he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal an argument that the government breached the plea agreement. As a part of the plea agreement, the United States agreed to recommend that:

> (1) The defendant be sentenced at the low end of the Guideline range, as that range is determined by the court, and
> (2) That the court grant the defendant a three level reduction in offense level for acceptance of responsibility, and
> (3) That the United States will file, pursuant to Rule 5K1.1 of the United States Sentencing Guidelines, a motion for downward departure in the guidelines for providing substantial cooperation to the government in the continuing investigation which led to the indictment in this case. The defendant understands and agrees that his cooperation is a continuing process which includes, but is not limited to, truthful and complete testimony at any and all future sessions of the Grand Jury and/or trials or other legal proceedings, state or federal, where his testimony is relevant as determined by the particular prosecuting entity. Such cooperation also includes debriefing sessions with the government agents and/or prosecutors, state or federal, in matters that they deem relevant to ongoing or future investigations.

Plea Agreement, pp. 1 - 2. The plea agreement also included the following:

> The defendant also understands and agrees that his cooperation included his being willing to submit to a polygraph examination, or examinations, in order to assist the United States and the Court in determining whether he is being, or has been, truthful when being interviewed by agents during past or future debriefing sessions.
> The defendant understands and agrees that an essential part of his cooperation is assisting the United States and its agents in identifying and obtaining any and all assets obtained with funds or other assets generated by the sale of any kind of illegal controlled substances during the pendency of the conspiracies outlined in the indictment, without regard to the alleged beginning or ending dates of the conspiracies outlined and alleged in said indictment.
> The defendant agrees that the specific areas of cooperation outlined in the preceding paragraphs may not be an exhaustive inventory of cooperative efforts that

> he may be required to perform, and that he may be asked to provide substantial cooperation in ways and means not specifically described and outlined in this document. He agrees to cooperate in every reasonable manner which may be proposed by the government. He reserves the right to refuse to cooperate in ways not specifically described and outlined in this document. However, he also agrees and understands that his refusal to cooperate in ways and means not specifically described and outlined in this document may be made known to the Court by the United States, and that the Court will make the decision as to whether the requested cooperation was (1) reasonable and (2) if reasonable, whether his lack of cooperation should in any way affect the Court's decision as to whether to grant the government's motion for downward departure, and/or how far the Court will depart from the guidelines if it grants the government's motion.
>
> The defendant understands that the government has agreed to consider requesting the Court, as part of the government's motion for downward departure, to impose a sentence in Count One of the indictment which is less than the statutory minimum mandatory sentence of twenty (20 years. Such a recommendation, if made, would be done pursuant to Title 18, United States Code, Section 3553(e).
>
> The defendant understands that the United States has represented to his attorney that the lowest sentence it could reasonably anticipate recommending to the Court, given the full cooperation of the defendant, would be fifteen years. However, he also understands and accepts that the United States reserves the right to not make such a recommendation. More particularly, depending on the government's assessment of his cooperation and his truthfulness, or lack of same, he understands that the government, even though it binds itself with the execution of this document by both parties to file the motion for downward departure with the Court, agrees to no specific recommend sentence, even if the recommended sentence is far greater than one which may be contemplated by the defendant. The government will act in good faith in its determination of what sentence to recommend to the Court and agrees that the defendant and his counsel will have the right to present evidence at time of sentencing and also to request the Court to impose a lesser sentence than that recommended by the government, regardless of what sentence may be recommended by the government.

Plea Agreement, pp. 2 - 3.

Gordon claims that the government breached the agreement by arguing at sentencing, "improperly, that Mr. Gordon had not been truthful during his cooperation under the terms of the plea agreement." He maintains that the government's argument "to the effect that [he] had been less than truthful was a breach of the agreement reached between the parties." The United States filed

a "Section 5K1.1 Motion for Departure Under the Sentencing Guidelines Premised On Substantial Assistance" immediately before the sentencing hearing. (Doc. 49)   In that motion, the government concluded that:

> In summary, the government believes that Kirlew Gordon provided substantial assistance to the government, but may be holding back additional information which would be of substantial assistance.  In any event, whether he has revealed everything known to him or is withholding additional information is immaterial.  Based strictly on the information he has provided to this date, the government recommends to the Court that it grant the government's motion and impose a sentence of 18 years or 216 months as to defendant Kirlew Gordon.

"United States Section 5K1.1 Motion for Departure Under the Sentencing Guidelines Premised On Substantial Assistance," p. 3. At the sentencing hearing, the government argued as follows:

> I think Mr. Gordon's substantial assistance is outlined fairly well in the written motion.  The government believes that to a fairly significant extent, Mr. Gordon was telling the truth. We are unsure, however, concerning his statements about giving all of the money to his wife and codefendant Ann Marie Gordon.  He may well have done that.
> We still are not certain as to whether he knew or knows what was done with the money.  But, as I pointed out in the written motion, regardless of whether he knows about it, the assistance that he provided, although it would qualify as substantial assistance, particularly with regard to information concerning an individual who not only had guilty knowledge but, in all likelihood, participation with regard to the death of Michelle Goodwin, virtually all of the information related to us was previously known to the government prior to his cooperation.
> At the same time, he told us what he says is everything he knew.  He provided us with at least two or three more good leads and good evidence, but we think that our recommendation of an eighteen-year sentence reflects the amount of cooperation that he extended to the government.

Transcript of Sentencing Hearing, pp. 2 - 3.   The court denied the motion, finding that "telling the truth to a fairly significant extent is actually another way or saying that it's not completely truthful."  *Id.* at 10 - 11.

It is concluded that the United States did not breach its agreement to file a motion for downward departure. The record reflects that the United States did file such a motion and addressed the motion at the sentencing hearing. The fact that the government offered at the sentencing hearing a complete assessment of the movant's cooperation did not result in a breach of the agreement. The government filed the motion as it had agreed. It was the court's decision to deny the motion. The movant cannot turn this denial into a breach on behalf of the government. Because the plea agreement was not breached, Gordon's attorney was not deficient in failing to make such an argument.

Gordon next claims that he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal the issue of the district court's denial of allocution at sentencing. He argues that if

> he had been made aware of his right he would have submitted facts to the court in mitigation of his sentence, brought the court's attention to inconsistencies in evidence and facts submitted by the government and which the court relied upon in denying the motion for downward departure, demonstrate to the court that such evidence as submitted by the government breached the plea agreement and created a denial of Due Process by the submission of unsupported facts intended to convey the impression that [he] had been less than truthful to the government and did not deserve the promised departure, and would have advised the court that [he] had vigorously pursued and requested of counsel to file timely objections to the presentence report, which request was ignored by counsel and resulted in the failure to hear the requested objections.

The court concludes that Gordon was offered sufficient opportunity for allocution at the sentencing hearing. First, at the beginning of the hearing, after the government had explained its basis for the motion for departure, the court asked if the defense wanted to say anything about the motion. Transcript of Sentencing Hearing, p. 3. Gordon's attorney then addressed the court as follows:

>   I want to say that I appreciate the fact that the government filed it. I was hoping, as any defense attorney worth his salt would, that they would ask to go down to fifteen years, but they didn't choose to do so.
>   The only thing I would have to say, other than that about the motion they filed, is Mr. Gordon has made it abundantly clear to me the first time this million dollar plus figure was brought up that that was just absolutely ridiculous as far as any knowledge he had about money involved in this situation. I think he has repeatedly told the government that when they've talked to him.
>   They obviously don't believe him, but it's his position that he has no idea how that kind of money would have been generated based on what he knows was going on. And he says he certainly had no control over nor knowledge of that kind of money being involved in this situation. The only thing that he pointed out to me when we got Mr. McGregor's motion a few moments ago was that two million dollar figure.
>   The only thing I know to do, and it's not timely now, but at some later date would be for the government perhaps to give him a polygraph test about that, and I feel certain, based on everything that he's told me, that he would pass it.

*Id*. at 3 - 4. Later during the sentencing proceeding, Gordon was offered a second chance to address the court:

>   THE COURT: Is there anything else you wish to say before I pronounce sentence in this case?
>   DEFENSE COUNSEL: No, ma'am.

*Id*. at 9 - 10. Additionally, after sentencing, Gordon filed a motion to reconsider the sentence, arguing that the motion for downward departure should have been granted because Gordon did not lie to the government or hold anything back. This motion was denied. Because it is clear that Gordon had ample opportunity for allocution, his claim must fail. Likewise, his claim that his attorney was ineffective for failing to make this argument is without merit.

Gordon next claims that he received ineffective assistance of counsel at trial and on appeal because his attorney failed to note, object, or raise on appeal, the trial court's failure to advise him of the elements of the crime with which he was charged. He argues that at the plea hearing and sentencing, he "vigorously protested" the fact that he was part of a continuing series of violations,

and that he derived substantial income or resources from the venture. He adds that had he known he was pleading guilty to § 848, continuing criminal enterprise, he would not have entered a guilty plea.

The transcript of the plea hearing belies the movant's claims that he did not know the elements of the crimes or that he was pleading guilty to a continuing criminal enterprise. At the plea hearing, Gordon clearly stated that he understood that he was charged with a continuing criminal enterprise. Transcript of Plea Hearing, p. 5. Gordon also clearly told this judge on two separate occasions that his attorney had explained the elements of the crimes to him and that he understood the elements of the crimes. *Id*. at 6, 10 - 11. Mr. Gordon then told the court that he and his attorney had met with the prosecution, and that the prosecutor had discussed the evidence and the elements of the offenses with him. *Id*. at 18 - 21. The movant clearly understood the nature of the charges against him and the elements of those crimes. His attorney was not ineffective for failing to make the argument that he did not.

Finally, Gordon claims that his attorney was ineffective on appeal because he failed to advise him of his right to seek rehearing en banc consideration or his right to seek certiorari review of the adverse decision in the United States Supreme Court. In his plea agreement, Gordon expressly waived his right to appeal his sentence, as long as it was within the guideline range. Despite this waiver, Gordon unsuccessfully pursued an appeal of his sentence. In dismissing his appeal, the Eleventh Circuit Court of Appeals held as follows:

> Kirlew S. Gordon appeals his 262-month sentence imposed for being part of a continuing criminal enterprise, a violation of 21 U.S.C. § 848, and conspiracy to import goods (cocaine), a violation of 18 U.S.C. § 371. Gordon's appeal fits within the terms of the sentence-appeal waiver in his plea agreement, and therefore, his appeal concerning the amount of cocaine that was involved in the offense and the

disparity between sentencing for cocaine base and cocaine hydrochloride is not properly before this Court. *See generally U. S. v. Bushert*, 997 F.2d 1341 (11th Cir. 1993); *U. S. v. Buchanan*, 131 F.3d 1005 (11th Cir. 1997).

Clearly, Gordon's attorney was not deficient for failing to inform Gordon of the availability of rehearing and certiorari, or for failing to pursue those avenues himself. As the appellate court noted, Gordon waived his right to appeal his sentence. Thus, continuing with his claims in an application for rehearing or petition for a writ of certiorari would have been an exercise in futility. Gordon's attorney was not constitutionally ineffective for failing to further pursue his sentencing issues.

## **APPRENDI VIOLATION**

Gordon's final claims is that he was denied due process and his right to trial and notice because his drug quantity was decided by an unconstitutional preponderance of the evidence standard, in violation of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

Gordon was convicted of participating in a continuing criminal enterprise, in violation of 21 U.S.C. § 848, and conspiracy to import cocaine, in violation of 18 U.S.C. § 371. Title 21 U.S.C. § 848(a) provides that "[a]ny person who engages in a continuing criminal enterprise shall be sentenced to a term of imprisonment which may not be less than 20 years and which may be up to life imprisonment." Title 18 U.S.C. § 371 provides that:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the

conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

Gordon was sentenced to 262 months imprisonment for the continuing criminal enterprise and 60 months for the conspiracy to import cocaine. Neither of these sentences is beyond the statutory maximum. Therefore, he was not sentenced in violation of *Apprendi*.

Accordingly, the § 2255 Motion to Vacate be DENIED. An appropriate order will be entered DONE this 9th day of November, 2005.

                                              INGE PRYTZ JOHNSON
                                              U.S. DISTRICT JUDGE